May it please the Court. Vivian Fu for Petitioner Appellant Ruben Emery. I'd like to reserve four minutes for rebuttal. I'm having difficulty hearing you. Is it the microphones? Just speak up. Those are recording microphones. Okay. This is a federal habeas appeal governed by the AEDPA standard of review. The only issue on appeal is whether there is sufficient evidence under California Penal Code 18622B1 that the attempted robbery and murder were committed for the benefit of, at the direction of, and in association with any criminal street gang with the specific intent to promote, further, or assist in any criminal conduct by gang members. Of course, the clearly established law here is Jackson v. Virginia that upon the evidence adduced at trial, no rational trier of fact could have found proof of all the elements beyond a reasonable doubt. As Mr. Emery has argued throughout his state and federal proceedings, aside from the gang expert testimony, there was a complete lack of evidence that the attempted robbery and murder were gang-related. And when I say gang-related, I mean committed for the benefit, at the direction of, or in association with any criminal street gang with the requisite specific intent. There was no evidence that the crimes were committed in gang territory or in the territory of a rival gang. No gang signs were flashed. The victim was not a gang member. None of the witnesses were gang members. No gang tattoos were visible. And Emery committed the crime with a non-gang member, and there was no evidence of bragging or graffiti to take credit for the crime. Detective Morales, the prosecution's gang expert, provided generic testimony relating to the importance of respect to a gang member, and he speculated that Emery felt compelled to avenge Leonardo's treatment at the market because Leonardo was in another Hispanic gang, but he relies on no facts other than Emery's membership in the Westside Longo Gang and his assumption that Leonardo belonged to the Eastside Longo Gang for his speculation that the crimes were gang-related. This reliance on gang membership alone, plus generic testimony, generic expert testimony, was also the situation in Virginia v. Scribner, where this Court pointed out that the expert testimony did not and could not establish the defendant's specific intent. And there's even less evidence in this case than in either Briseno or Garcia v. Terry, also decided by this Court, because Emery committed the crimes with a non-gang member, and Leonardo, to the extent that he even was a gang member, was in a different gang altogether. Do you think our cases, trying to divine what California law is with respect to this enhancement, and the California cases, on the other hand, are they inconsistent with one another? Yes. There is conflict in the lower, in the California Court of Appeals, because there's been, as set forth in our 28-J letter, there's been recent cases, people V. Ramon and people V. Ochoa, which are consistent with this Court's reasoning in Briseno and in Garcia. If we're supposed to try to apply whatever the California Supreme Court would apply, wouldn't we be well-advised to certify this question and get this resolved once and for all? That would be one way to handle it. What would be the other way? Well, based on this Court's decisions in Garcia and in Briseno, we would, we are. Now we know that the courts of appeal are in, you know, disagreement. I'm sorry? I mean, since now we know that the California courts of appeal are in disagreement, and since it's our obligation to do what we think the Supreme Court would do, I mean, what other choice do we have? Pick the one we like the best, or? Yeah, I see what Your Honor is saying. Although our argument would also be that this Court's interpretation of people V. Gardley, which is the only California Supreme Court that has touched on 186.22b1, this Court's interpretation of that Supreme Court case is valid, and to the extent that that case predicts what the California Supreme Court would do in a situation like this. And just to say, too, that the recent California Supreme Court decisions make clear the necessity of evidence apart from the gang expert's testimony to support the gang enhancement. As discussed, you know, in Ochoa, in people V. Ramon particularly, where two members of the same gang were caught in gang, stopped by police in gang territory with a stolen car, and the gang expert testified generically as to how having a stolen car and a gun would benefit the gang and opine that the crimes were gang related. And the State Court engaged in a detailed discussion of Kilbrew, Inouye Frank, and people V. Gardley, which are also the cases relied upon by this Court in Bricenau, and rejected the State's argument, also made in Bricenau and in this case, that the mere fact that the two gang members are together committing the crime constitutes sufficient evidence to support the gang enhancement. And the Ramon Court stated the people's expert gave a possible motive or reason for Ramon being in possession of a stolen vehicle and gun. While the people's expert's opinion certainly was one possibility, it was not the only possibility. A mere possibility is not sufficient to support a verdict. People V. Kilbrew, the same theme runs through. Speculation is not substantial evidence. And Mr. Inouye's case is indistinguishable in this respect from Inouye Frank, people V. Ramon, Ochoa, Kilbrew, and this Court's decisions in Bricenau and Garcia. There's no evidentiary support for the gang expert's opinion, and it only served to inform the jury of how to decide the case. And in essence, the gang expert testified that the Mexican mafia told Hispanic gangs to stick together, and therefore Emery, the member of one Hispanic gang, felt compelled to avenge the mistreatment of the younger brother of an acquaintance that he had never even met before because he was in a different Hispanic gang. And as this panel is no doubt aware, there are conflicts between Hispanic gangs in California probably every day. So clearly not all Hispanic gang members have received this particular message from the Mexican mafia, and there's no evidence that Emery or Leonardo were operating under any sort of assumption that they were backing each other up because they believed that all Hispanic gang members should stick together. And Morales also testified that Hispanic gangs only somewhat tried to follow that rule, so he was clearly aware that that rule is not always followed. And I just want to point out also that the gang expert gave a direct opinion in this case and not a hypothetical, and this is at ER 213, which is improper under California law. And Morales' testimony also focused solely on the importance of respect to a gang member, that Emery committed these crimes because he feared a loss of respect within his own gang if he did nothing. But the statute requires that the crimes be committed to promote criminal conduct by a gang. The crime is not satisfied by gang members who commit crimes to promote their own status within the gang, and a fear of losing respect within your own gang doesn't translate into a specific intent to promote the criminal conduct of the gang as a whole. Is the Moonray Market in the turf of the West Side? There was no evidence that the Moonray Market was in the turf of the West Side Longo Gang, the East Side Longo Gang, or any gang. There was no evidence for that trial. The State Court of Appeal in this case made an unreasonable determination of the facts. First, the State Court determined that Danny Alvarez was a member of East Side Longo Gang and based its decision on that incorrect assumption. The prosecution's gang expert gave no testimony with respect to Danny being a gang member and, in fact, conceded that he was not a gang member at ER 214. The prosecution, in closing, never argued that Danny was a gang member but characterized him as someone who hung out with gang members. And the State Court also reasoned that the crimes were gang-related because, in its words, a street gang propers by cowing local residents into not challenging the gang's domination of the neighborhood. Killing child who had disrespectfully manhandled Leonardo, a member of a related gang, taught neighborhood residents to fear the gang and disciplined local residents not to defer to gang members. And this is at ER 31. But this is pure speculation on the part of the State Court. The gang expert never testified that the crime was committed to cow local residents. The prosecution never argued that theory to the jury in closing. And as was the case of Arsenio, the gang expert, in Emory's case, focused solely on the importance of respect within the gang. Let me ask you a practical question. If we agree with you and you're right, what would happen? We would, the result of this would be that the enhancement is stricken. Yes. And he's still serving. He's serving life without parole. Life without parole plus 25 years. Yes, the 25 years. What does this do for him exactly? Well, as a practical matter, he would still have the sentence for the first-degree murder. Life without parole plus 25 years. The 25 years would be struck because that's the firearm enhancement, which depends upon this crime being gang-related. He'd go from life without parole plus 25 years plus 10. The 10 would also be struck. To just life without parole. Yes. And just for my edification, is life without parole in California life without parole? I believe so. He's not going anywhere, even if he wins is the point. As a practical matter, that's probably true. He can hold his head up a little higher, I guess, but as a practical matter, he's not getting any time off. That's probably true. So as in Briseño, the gang expert here focused solely on the importance of respect. And in Garcia v. Cary, the State Court also concluded that the crimes were committed to instill fear in the local residents and facilitate gang operations. And this Court, in that case, rejected that conclusion as unreasonable because, like here, that theory had never been argued to the jury. And this Court stated in Garcia, any assumption by the jury that the gang was involved in types of criminal activity not mentioned in any of the testimony would be the purest of speculation. Here, it's the same. To assume otherwise is the purest of speculation. You said you wanted to reserve four minutes, and you're just about there. Okay. I just want to touch on one thing, that there's a complete lack of evidence of any relationship between Leonardo and Emery. And this goes to the State Appellate Court's theory of why this was gang-related and also what the prosecution argued at trial. There's no evidence that they even knew each other, that they'd ever met. At best, they were in different gangs. At most, he wasn't even a gang member, and Eastside Longo wasn't shown to be a gang with a pattern of criminal activity pursuant to California law. So without this evidentiary link, there's no way that the theory works that Emery committed these crimes because he was backing up Leonardo because there's no evidence that he knew that Leonardo was in any gang, much less a related gang. And I'll reserve. Thanks, Ms. Fu. Good morning, Your Honor. Supervising Deputy Attorney General Bill Bilderback on behalf of the ward. As the Court's questions to Ms. Fu indicated, there are two independent questions here. One of them is more of a legal question, which is, what is the controlling standard? The other question is a more factually based question, which is whether there was sufficient evidence under Jackson v. Virginia. And I would submit here there was sufficient evidence under Jackson v. Virginia, even assuming that Garcia and Briseño controlled this case. And I'll turn in a moment to whether I think Garcia and Briseño should control. But unlike the expert in Briseño here, Officer Morales did testify specifically and without objection that Petitioner committed this crime in furtherance of a gang. Ms. Fu attacks that as improper evidence. There was no objection to that evidence made at trial. There was no objection to the foundation for that opinion made at trial. And it's a little late on the appeal of the Federal Collateral Review to raise some question about the propriety of that evidence. The other piece of evidence that I keep hammering on in my briefing because I can't seem to get the other side to acknowledge it exists, is that Danny Alvarez, who is Petitioner's partner in crime at the time of the murder, admitted this was a gang-related crime. Specifically admitted the 186.22b allegation obtained to his participation in the crime. Given that Danny Alvarez was, as Petitioner points out, not even a gang member, certainly the jury could conclude reasonably that the gang member in the bulletproof vest with the tattoos carrying the gun was perhaps committing this crime for gang purposes if Danny, the brother of the guy who was roughed up, if Danny was committing this for gang purposes as well. So I think that we have better facts. What did Danny testify to at Emory's trial? He testified exactly what I just said, that he admitted that this crime was committed in furtherance of a gang. And I could direct the court to pages 115 and 116 of the excerpts of record for that. And it was specifically argued for two things. One, Officer Morales did not offer generic testimony that, as was found problematic in other cases, gang members do things, gang members act in specific ways. It was that this particular individual, Mr. Emory, committed this crime for gang purposes. Mr. Emory's reputation was enhanced. It was not generic or general testimony. It was specific testimony talking about this specific defendant. Also, I'm sorry, did you say it was ER 115 and 116? That's what I have in my notes. I hope I'm right. I would ask the court to make sure you're looking at the ER, not the supplemental ER. I made that mistake yesterday. ER 115, 116. I'm wondering what line you're referring to here. Can I grab my notes? Sure. Down at the bottom of 115, the question from the prosecution, Mr. Kim. In the agreement that you and I came to, this was questioning of Danny Alvarez, is that you would plead guilty to voluntary manslaughter, that you would admit that it was furtherance of a criminal street gang and their principal was armed with a firearm during the commission of defense. Is that true? The answer is yes. So he's being asked what he was going to plead guilty to? Yes. And he was also, and then – That's what you're hanging your head on? Well, I'm not hanging my head entirely on that, but it is, I think, an essential piece of evidence on the question. Again, this was stated in front of the jury, and the question is – The question is not whether you did it. The question is, is that what you're pleading guilty to? If he wasn't asked, was this furtherance of a street gang? But he was asked whether it was true also, Your Honor. Where? Where is that? Well, I suppose I'm inferring, I suppose I am inferring that he did not plead guilty or admit allegations that were false. I suppose. And I guess my point would be then that, again, the question is, could the jury – it's not whether or not I can prove, perhaps to the satisfaction of this Court or even to the Court of Appeals, but the question that we're stuck with is, could a jury, having heard that testimony, would it be rational for a jury to conclude that when Mr. Emory committed the crime, it was gang-related, given that Danny had, let us say, just not to put too fine a point on it, given that Danny had agreed to admit that it was a gang-related crime? I think, would the Court agree that at least that's a fair characterization of the record? I don't want to overstate the record. It's a fair decision, I guess. And then also, as I note, there was the evidence that, again, without objection, there was evidence that Leonardo was an Eastside Longo gang member. Without objection, there was evidence, and I think it's stipulated at this point, or at least not controverted, that Petitioner was a Westside Longo gang member. The evidence was, again, without objection, that Eastside and Westside had a peace treaty. Not that there was this sort of overarching Mexican Mafia policy, but specifically, these two gangs had a peace treaty. So, again, a jury could rationally come to the conclusion, under these circumstances, that this was a gang-related crime. And given that there was no other relationship, really, between these two gentlemen, other than this gang affiliation, the notion that he would somehow just go shoot somebody just because he was the little brother of a guy he'd known for a month or so seems improbable. Again, the jury is being asked to weigh what happened here, what happened on the night in question. And they came to a conclusion, a conclusion that is rationally supported, based on the evidence they were presented, that this was a gang-related crime. And again, indeed, really, there's no other rational explanation for what happened that day. But turning to the question of the Briseño and Garcia and the conflicts between Briseño and Garcia, I would say that there's two things. One is I disagree with Ms. Fu when she says that there is some conflict about whether or not Briseño and Garcia accurately describe what's in 186.22b1 or whether some California Court of Appeal cases accurately describe. The cases that have cited Briseño and Garcia positively simply said if Briseño and Garcia are the law, this case satisfies it. In no case, in no California case has a California Court of Appeal said we're applying Briseño and Garcia and we're finding that under that standard the burden of proof was not met. But we do have many cases, or at least many unpublished cases and several published cases, one of which was decided as recently as last month, which have explained that no Briseño and Garcia, particularly Garcia and less so Briseño, but both cases operate under a misapprehension of the ambit of 186.22b1 and what the burden of proof is in that statute. And to go directly to your point, Your Honor, about whether this case should be certified to the California Supreme Court for resolution of the question, I think not, and I think the reason not is because the question is not at the end of the day whether this court is correct about whether 186.22b1 requires some other crime. The question is whether a California court, given AEDPA's deference standard, could reasonably come to another conclusion. So even if this is what? About what California law means. Well, I would suggest that AEDPA talks about constitutional understanding, not California law understanding. I mean, if the California court is operating under the wrong premise of what California law requires, that's an entirely different animal, isn't it? Well, yes, and I would point out that, say, for example, under Estelle v. McGuire, a state court operating under a misapprehension of state law does not implicate the federal constitution. The only question is. . . Unless it deals with the elements of the crime and what must be proven, and as a matter of federal law, due process has been established by proving all the elements required. But the California courts get to sort out what those elements are, and again. . . Granted, but I'm saying if they've got the elements wrong, then the whole house of cards falls down. Well, I guess maybe where I'm different with the court is on this notion of what's right and what's wrong. Well, doesn't under California law, the California Supreme Court is the expositor of what's right and wrong on that? Well, until the California Supreme Court speaks, the California courts of appeal are perfectly capable, and indeed routinely do. Great, but now we have two California court of appeal cases going either way. We don't, Your Honor, and that's my point. No California court of appeal case has ever held that because the Briseño-Garcia standard controls a particular case, and because of that control, the burden of proof failed. Every California court of appeal case that has confronted some conflict between Briseño-Garcia and their understanding of law, every case has held that the Briseño-Garcia test does not apply to 186.22. What is the import of Ochoa? I'm sorry? What does the import of Ochoa decide in November 20, 2009? My understanding of Ochoa is that they found that in that case, Briseño-Garcia was satisfied. I hope I'm making myself clear. The question in that case is whether or not there was sufficient evidence, and the point is if Briseño-Garcia puts a higher standard than some of the California cases do, that a California court said that this higher standard was met doesn't imply either that that's necessarily the controlling standard or that the lower standard was not met. It's simply sort of closing the door, so to speak, on any subsequent attack in federal collateral review under Briseño-Garcia. By saying that Briseño-Garcia was met in that case. So, again, California can be wrong about California law, and unless this court can say with certainty that California's interpretation of California law runs afoul of the federal constitution in some way, interference in the state court's determination of the question would be inappropriate. So much wrong with certifying this question to the Supreme Court. There's nothing wrong with certifying a question to the Supreme Court, Your Honor. It's just that it's not necessary for an appropriate resolution of this case. I would point out to the court, too, that recently, well, recently, back in the spring, we had requested in a case called, this California Supreme Court case called People v. Abular, plus two, that they resolve this dispute. Now, there's no, of course, guarantee that the California Supreme Court is going to honor our request. But so at least we have, we're mindful of the dilemma that the court finds itself in and are doing our best to try to get the court to resolve it as well. So if the court's inclined to certify the question, I'd be delighted to file briefs in that court as well. Thank you very much. Ms. Fu. I just want to address some of the points that counsel made. Can you please speak up? I cannot hear you. I'm sorry. I'm sorry, Your Honor. I just want to address some of the points that counsel made, particularly First, I'm going to start with that Danny supposedly admitted that this was a gang-related crime. He did not admit that it was a gang-related crime. What the prosecution asked him was, is it true that you and I came to an agreement that, you know, you would plead guilty to voluntary manslaughter and admit that it was in furtherance of a criminal street gang? And that's all he said. And also that he would agree to testify truthfully at trial. And Danny testified at trial that the crimes had nothing to do with gangs. He gave that specific testimony. And he also testified that he would agree to testify truthfully at trial as part of his agreement. So I think the only thing the jury could take from that is that he didn't admit the crime. And also in furtherance of a criminal street gang is very different than the specific elements for the benefit of, at the direction of, in association with any criminal street gang with the requisite specific intent. So I don't think that that is sufficient evidence. With respect to Leonardo being an Eastside gang member, the only evidence of that was Danny testifying that, oh, my brother is a member of Eastside Longo. But Morales never gave any testimony as to whether or not Leonardo was an Eastside Longo gang member. He didn't interview Leonardo. He didn't think that their relationship was important, which is what he testified. And yet he bases his opinion on this supposed gang-based relationship. But how could he? His opinion as an expert needs to be based on reliable facts. And there is no reliable fact here. There's no evidence that Leonardo was a gang member, an Eastside gang member, or that Eastside Longo was a gang with any pattern of criminal activity. With respect to the Mexican Mafia Peace Treaty, there was no evidence that these two gangs had a specific peace treaty. All that Morales said was the Mexican Mafia told all Hispanics to stick together. And that was it. So supposedly, based on that, all Hispanic gang members in all of California are supposed to be somehow related. I mean, there's no evidence that Eastside Longo and Westside Longo had ever worked together before, that they'd ever collaborated, that Danny, Leonardo, or Leonardo. East is east and west is west. I mean, it's insane. So with respect to the California Supreme Court citing Garcia and Briseño, I don't think that the California court would necessarily feel that it was necessary to cite to a Ninth Circuit case when it was interpreting California law. But what the fact is is that people v. Ramon and people v. Ochoa and similar cases are consistent with the reasoning set forth in Briseño and in Garcia. And even assuming that all of this evidence, taking everything that the expert said as true, even though it's completely speculative, at the end of it, it's based on, because there's no lack of evidence of a proper relationship between Leonardo and Emery, there is even taking, even if it's true that he can testify as to, you know, he did this because the gangs are related. I mean, there's just no evidence that Emery knew that Leonardo was in a gang and that they were somehow working together. There's just no evidence of specific intent. And the only evidence of specific intent was provided by the gang expert. And as all the recent California Supreme Court has said and Briseño and Garcia, that's not enough to establish sufficient evidence pursuant to this, to 186.22. Thank you. Thank you, too. The case just argued is submitted. We'll stand in recess.
judges: Conlon, Hall, Silverman